IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE EXTRADITION OF ) | Case No. 16 CR 283 |
| JOSE CRUZ MONTES ) | |
| AKA "EL PAN," ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER GRANTING
REQUEST FOR EXTRADITION**

The Government of Mexico ("Mexico") has requested the extradition of Jose Cruz Montes ("Cruz Montes") pursuant to the Extradition Treaty between the United States of America and Mexico, dated May 4, 1978, 31 U.S.T. 5059, TIAS 9656 (the "Treaty"). Mexico says Cruz Montes is wanted for the crime of homicide, as defined in Articles 260, 261, sections I and II, in relation to Article 262, sections I, II, and III, a crime punishable under Article 264 of the Penal Code of the State of Michoacan, Mexico. The United States ("the Government"), acting on Mexico's behalf, contends that the totality of evidence before this Court establishes probable cause to believe that Cruz Montes committed the alleged offense and, therefore, he should be extradited to Mexico. Cruz Montes contests his extradition arguing there is not probable cause to believe he committed the alleged crime.

This Court has carefully considered the relevant Treaty provisions, the exhibits submitted by Mexico in support of its extradition request, the written submissions of the Government and Cruz Montes, and the arguments made by counsel during the extradition hearing held on September 6, 2016. For the reasons set forth below, the Court finds there is competent evidence to sustain a finding of probable cause as to the charge of homicide in Mexico, and Cruz Montes should be extradited to Mexico in accordance with the Treaty. Therefore, Cruz Montes is committed to the custody of the United States Marshal pending final disposition of this matter by

the Secretary of State.

## I. BACKGROUND

Cruz Montes is wanted in Mexico for homicide in connection with the death of Roberto Herrera Gonzalez ("Gonzalez"). Gonzalez died on January 5, 2011 as a result of the injuries he sustained after Cruz Montes allegedly assaulted him on January 1, 2011. A warrant for Cruz Montes's arrest for assault and battery was issued by the First Judge of First Instance for Criminal Matters in the Judicial District of Morelia, Mochoacan on April 26, 2011. On July 15, 2011, the First Criminal Chamber of the Supreme Court of the State of Michoacan issued a modified arrest warrant for Cruz Montes for the crime of homicide due to the fact that Gonzalez died as a consequence of the injuries sustained.

On October 4, 2012, Mexico filed Diplomatic Note 06240 regarding the provisional arrest for international extradition purposes of Cruz Montes. On April 27, 2016, the Government filed a Complaint for Provisional Arrest with a View towards Extradition. Cruz Montes was arrested on May 12, 2016 for extradition purposes and has been detained at the Metropolitan Correctional Center (the "MCC") in Chicago, Illinois, in the custody of the United States Marshal Service. On July 6, 2016, the Embassy of Mexico submitted Diplomatic Note 03329 formally requesting the extradition of Cruz Montes. The extradition hearing was held on September 6, 2016. [ECF No. 16]. The purpose of the hearing was to allow this Court to determine whether the evidence of criminality presented by Mexico is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.

## II. LEGAL STANDARD

The process of extraditing a fugitive from the United States to Mexico is governed by the

provisions of the federal extradition statute, 18 U.S.C. §§ 3181 *et seq.,* and the Treaty between the United States and Mexico, 31 U.S.T. 5059. Under Article 1 of the Treaty, the United States and Mexico have mutually agreed to extradite fugitives who are charged with crimes in one country and subsequently found within the territory of the other. 31 U.S.T. 5059. Under Article 11 of the Treaty, once a foreign fugitive is found within the territory of the United States, Mexico may then request the provisional arrest of the fugitive through diplomatic channels. *Id.* The request must contain "a description of the person sought, a description of his alleged crimes, a declaration of the existence of a warrant for his arrest, and an undertaking to submit a formal request for extradition." *In re Extradition of Rodriguez Ortiz,* 444 F.Supp.2d 876, 880 (N.D.Ill.2006) (*citing* the Treaty, Article 11). If a formal request for extradition and the required supporting documents are not filed within sixty days of the apprehension of the fugitive, the provisional arrest must be terminated. *Id.* In addition, 18 U.S.C. § 3184 authorizes a judicial officer to issue a warrant for the arrest for any fugitive whose extradition is requested, upon a sworn complaint charging the fugitive with committing an extraditable offense.

The second stage in the extradition process is the submission of a formal request for extradition. Article 10 of the Treaty lists the required contents of a formal request for extradition, and requires that it be submitted through the appropriate diplomatic channels. In addition to the formal request, supplemental documents must be provided. Where a fugitive has not yet been convicted, the required documents include: (1) a certified copy of the warrant for the fugitive's arrest issued by a judge of the requesting party; and (2) "[e]vidence which, in accordance with the laws of the requested [p]arty, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there." (Treaty, Article 10). Article 10 further directs that these documents shall be received into evidence if they are certified by the principal

consular officer of the United States in Mexico. The federal extradition statute similarly provides that documentary evidence proffered by a foreign government requesting extradition will be admissible if it is certified to be properly authenticated by the principal consular officer of the United States in the requesting country. 18 U.S.C. § 3190. *See also* In re Assarsson, 635 F.2d 1237, 1245–46 (7th Cir.1980).

In order to determine whether extradition is appropriate, the authority of a magistrate judge serving as an extradition judicial officer "is limited to determining an individual's eligibility to be extradited, which is done by ascertaining (1) whether the crime is an extraditable offense under the subject treaty, and (2) whether probable cause exists to sustain the charge." *In re Extradition of Sainez,* 07–MJ–0177, 2008 WL 366135, at *3 (S.D.Cal. Feb. 8, 2008) (citation omitted); *see also* 18 U.S.C. § 3184 (providing for extradition "[i]f, on such hearing, [the court] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention."). If the magistrate judge determines that the charged offenses are within the treaty's terms and probable cause exists, he is to certify the matter to the Secretary of State, who has sole discretion to determine if the extradition should proceed. *In re Extradition of Mazur,* No. 06 M 295, 2007 WL 2122401, at *1 (N.D.Ill. July 20, 2007) (*citing* Eain v. Wilkes, 641 F.2d 504, 508 (7th Cir.1981)).

### III. ANALYSIS

Extradition is appropriate where the Court makes the following findings: (1) the judicial officer has jurisdiction to conduct an extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the person before the Court is the fugitive named in the request for extradition; (4) there is an extradition treaty in full force and effect; (5) the crimes for which surrender is requested are covered by that treaty; and (6) there is competent legal evidence to support the

finding of probable cause as to each charge for which extradition is sought. *In re Extradition of Garcia,* 188 F.Supp.2d 921, 925 (N.D.Ill.2002) (*citing Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542 (1925)). Cruz Montes does not challenge the first five requirements and strictly focuses on probable cause. In other words, Cruz Montes contests his extradition only on the basis that there is no probable cause to charge him for the crime as to which extradition is sought. Thus, the Court turns to the sole factor that Cruz Montes challenges: whether there is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought?

### A. Probable Cause

Cruz Montes argues that extradition should be denied because probable cause cannot be established in this case. He asserts that the Government's evidence from the two eyewitnesses to the alleged homicide in Mexico contains inconsistent statements about the facts of the case and raises doubts about the reliability of both witnesses. Cruz Montes also contends that the causation of Gonzalez's death is unclear from the record and urges this Court to find that extradition is not appropriate for these reasons.

#### 1. Standard for Determining the Sufficiency of Evidence

Before the Court addresses the evidence that Mexico has provided, the Court notes at the outset that the hearing contemplated under the federal extradition statute is not a trial on the merits of the charges. It is more in the nature of a preliminary hearing. *Bovio v. United States,* 989 F.2d 255, 259 (7th Cir.1993). This Court is not required to determine whether Cruz Montes is guilty "but merely whether there [i]s competent legal evidence which would justify his apprehension and commitment for trial if the crime had been committed in Illinois." *In re Rodriguez Ortiz,* 444 F.Supp.2d at 884 (*citing Collins v. Loisel,* 259 U.S. 309, 314–315, 42 S.Ct.

5

469, 66 L.Ed. 956 (1922)); *see also* Gill v. Imundi, 747 F.Supp. 1028, 1038 (S.D.N.Y.1990) ("[T]he hearing before the extradition magistrate does not determine the guilt or innocence of the accused but rather represents a judgment of whether there is competent evidence that would support a reasonable belief that the subject of the proceedings was guilty of the crimes charged.") (quotations omitted).

In other words, competent evidence for purposes of an extradition proceeding "is not necessarily evidence competent to convict." Esposito v. Adams, 700 F.Supp. 1470, 1476 (N.D.Ill.1988) (quotations omitted). Rather, probable cause will be found where there is evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." In re Extradition of Kapoor, No. 11–M–456, 2012 WL 1318925, at *4 (E.D.N.Y. Apr. 17, 2012) (*citing* Lo Doca v. United States, No. CV 95–713, 1995 WL 428636, at *12 (E.D.N.Y. July 07, 1995)).

The probable cause standard is a "flexible, practical common-sense one." U.S. v. Hayes, 236 F.3d 891, 894 (7th Cir.2001). Accordingly, "[i]n making this determination, courts apply a 'totality of the circumstances analysis' and 'make a practical, common sense decision whether, given all the circumstances ... there is a fair probability' that the defendant committed the crime." In re Rodriguez Ortiz, 444 F.Supp.2d at 884 (*quoting* In re Extradition of Okeke, No. 96–7019P–01, 1996 WL 622213, at *5 (D.N.J. Sept. 5, 1996)). The Federal Rules of Evidence and the Federal Rules of Criminal Procedure do not apply to extradition proceedings. Bovio, 989 F.2d at 259 n. 3. Hearsay evidence may be considered and may form the basis for a finding of probable cause. *In re Extradition of* Nolan, 651 F.Supp.2d 784, 795 (N.D.Ill.2009). However, the evidence offered in support of extradition must be "competent and adequate." *Id.* (citing Bingham v. Bradley, 241 U.S. 511, 517, 36 S.Ct. 634, 637 (1916)). Thus, when "presented with

evidence through affidavits, the court may conclude, on a review of the affidavits submitted that there are insufficient indicia of reliability or credibility to establish probable cause." *In re Rodriguez Ortiz,* 444 F.Supp.2d at 884 (quotations omitted). Similarly, when an extradition request consists of "mere conclusory allegations unsupported by substantive evidence, extradition will be denied." *Id. (citing United States v. Fernandez–Morris,* 99 F.Supp.2d 1358, 1366 (S.D.Fla. July 30, 1999)).

In addition, a defendant's right to introduce evidence in an extradition proceeding is limited. *In re Rodriguez Ortiz,* 444 F.Supp.2d at 884. He "is not entitled to contradict the demanding country's proof or pose questions of credibility, but is limited to offering evidence which explains or clarifies that proof." *In re Nolan,* 651 F.Supp.2d at 794 (*citing In re Extradition of Guillen,* No 90 CR 1056, 1991 WL 149623, *8 (N.D.Ill. July 12, 1991)); *see also Esposito,* 700 F.Supp. at 1477 (declining to consider the credibility and motives of witnesses). Allowing the admission of explanatory evidence is intended to "afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *In re Extradition of Ben–Dak,* No. 06 Mag. 1540, 2008 WL 1307816, *4 (S.D.N.Y. Apr. 11, 2008) (quotations omitted). However, the court must ensure that the extradition proceedings are not converted into a "dress rehearsal trial." *Jhirad v. Ferrandina,* 536 F.2d 478, 484 (2nd Cir.1976), cert. denied, 429 U.S. 833 (1976). For this reason, evidence attacking the credibility of a witness is not permissible, and any issues of credibility are to be resolved at trial. *In re Extradition of Mazur,* No. 06 M 295, 2007 WL 2122401, *19 (N.D.Ill. July 20, 2007) (citations omitted).

### 2. Summary of Evidence In Support of Probable Cause

It is undisputed that on the morning of January 1, 2011, Cruz Montes planned and carried

7

out an assault against Gonzalez in Huandacareo, Michoacan, Mexico. During the assault, Gonzalez fell, hit his head on the edge of a sidewalk and suffered serious facial injuries and fractures to his skull, which resulted in significant bleeding. After this incident, Gonzalez was taken to the hospital where, despite efforts by doctors, he died on January 5, 2011.

It is Mexico's position that Gonzalez died as a result of the life-threatening wounds delivered by Cruz Montes on January 1, 2011. In support of that allegation, Mexico has provided this Court with the sworn statements of two eyewitnesses who claim to have knowledge about Cruz Montes's involvement, as well as reports by a medical examiner explaining the cause of Gonzalez's death. Based on these statements, as well as other circumstantial evidence, the Government urges this Court to find that there is the requisite probable cause to find that Cruz Montes should be extradited to Mexico.

The Government relies on the sworn statements of Jesus Herrera Sanchez ("Sanchez") and Alberto Alvarez Manriquez ("Manriquez"), two individuals who were eyewitnesses to the events of January 1, 2011. (Ex. 6 & 7 of Gov. Ex. 2). Sanchez gave a formal statement to Mexican law enforcement about this incident, which revealed that on January 1, 2011, Cruz Montes asked Sanchez for his assistance in beating Gonzalez. Even though Sanchez refused to aid him, Cruz Montes carried out his assault anyway by hitting Gonzalez, which resulted in both men falling to the ground. "They were struggling and then fell to the ground." (Ex. 7, p. 1 of Gov. Ex. 2). *Id.* Gonzalez's forehead "stroke [sic] against the edge of the sidewalk" and he was taken to the hospital. The next day, Cruz Montes stopped by Sanchez's house and asked Sanchez to "help [him] out, give [him] a hand, do not state against [him]self." (Ex. 7, p. 1 of Gov. Ex. 2). Sanchez refused to cooperate and told Cruz Montes that he would not lie and that he was going to tell authorities what he witnessed in Cruz Montes's attack on Gonzalez. Following

this conversation, Sanchez did not see Cruz Montes again in Huandacareo.

Manriquez also gave a formal statement to Mexican law enforcement. According to his statement, on January 1, 2011, Cruz Montes became verbally aggressive toward Gonzalez and started punching Gonzalez in the face, which resulted in both men falling to the ground and Gonzalez's "face stroke [sic] against the edge of the sidewalk." (Ex. 6, p. 1 of Gov. Ex. 2). Despite Gonzalez laying on the ground, Cruz Montes "took off his jacket so as to continue fighting intending to kick [Gonzalez]." (Ex. 6, p. 1 of Gov. Ex. 2).

Sanchez and Manriquez both participated in an identification proceeding on September 14, 2011, and they identified a photograph of Cruz Montes as the man described as beating Gonzalez and causing his death. (Ex. 10 & 11 of Gov. Ex. 2).

The Government also relies on the autopsy report and letter from the medical examiner, Dr. Rodrigo Jimenez Garcia ("Dr. Garcia"), which show that the beating caused Sanchez's death because he lost a significant amount of blood and his organ systems failed. (Ex. 4, 8, & 9 of Gov. Ex. 2). Gonzalez was admitted to the Unit of Intensive Therapy at the hospital with bruises on both eyelids and fractured facial and nasal bones "deriving in a severe hemorrhage, which led to hypovolemic shock." (Ex. 9, p. 4 of Gov. Ex. 2). Dr. Garcia noted in his January 5, 2011, autopsy report that the cause of the victim's death was "disseminated intravascular coagulation secondary to hepatorenal failure in multi-contused chronic cirrhotic, which is classified as lethal due to the consequences." (Ex. 4, p. 2 of Gov. Ex. 2). In a letter dated October 12, 2013, Dr. Garcia expanded upon his January 5, 2011 autopsy report by explaining that Gonzalez's death was "owed to complications presented due to the cranium-facial trauma that caused the solid facial skill and nose bones fracture, and as consequence he had profuse hemorrhaging that took him to hypovolemic shock, and thus disseminated intravascular coagulation and finally death."

(Ex. 8, p. 5 of Gov. Ex. 2).

**3. Cruz Montes's Arguments and Sufficiency of the Evidence**

Cruz Montes makes several arguments in support of his position that Mexico's evidence does not establish probable cause. First, Cruz Montes argues that extradition is improper in this case because Sanchez's and Manrique's inconsistent statement raise doubts about the credibility of the eyewitnesses. He contends that one witness says Cruz Montes continued to beat Gonzalez after they fell to the ground; while the other witness said "nothing about any further beatings that happened afterwards." (Hr'g Tr., p. 3, ¶ 20-21). The Court disagrees with Cruz Montes's argument that Sanchez and Manrique contradict each other. Further, any alleged contradiction does not render these two witnesses unreliable.

The Court reiterates that issues of credibility are beyond the scope of this proceeding. As mentioned above, the defendant cannot contradict the demanding country's proof or pose question of believability. The defendant, however, is allowed to offer evidence that explains or clarifies that proof. Since Cruz Montes did not offer any evidence to clarify the statements from the eyewitnesses, the Court cannot take into consideration any alleged conflict between them. Cruz Montes's objection really goes to the weight and not the admissibility of the witnesses' statements in the context of an extradition hearing.

Further, the witnesses' statements do not appear to contradict each other. A fair reading of both statements is that Cruz Montes hit Gonzalez in the face, both men fell to the ground, Gonzalez struck his head on the sidewalk and he was bleeding. (Exhibits 6 and 7 of Gov. Ex. 2). The statements do not conflict with respect to the essential facts.

Next, Cruz Montes argues that the cause of Gonzalez's death is unclear. Cruz Montes argues that Gonzalez died from a heart attack and not from active bleeding. In support of this

argument, Cruz Montes relies on the Arrest Warrant dated July 15, 2011, which states that on January 5, 2011, "the personnel refers that there is no active nose bleeding anymore and places again the clogging at 12:40. The person has a heart attack . . . ." (Ex. 1, p. 29 of Gov. Ex. 2). The Court disagrees with Cruz Montes's reading of this evidence. The autopsy report concludes that the cause of death was due to "disseminated intravascular coagulation secondary to hepatorenal failure in multi-contused chronic cirrhotic, which is classified as lethal due to its consequences." (Ex. 4, p. 2 of Gov. Ex. 2). Thus, probable cause is established here because the documents show the death was caused from complications due to injuries from the beating. In addition, even if there is an issue about the cause of death, this is for the fact-finder in Mexico to consider where the issue can be fully litigated with cross-examination of expert witnesses.

In sum, the issue before this Court is not whether Cruz Montes should be convicted of the alleged crime. As the Court has explained, the issue is only whether there is probable cause to believe that Cruz Montes committed the offense charged. *See, e.g., DeSilva v. DiLeonardi,* 125 F.3d 1110, 1112 (7th Cir.1997) ("extradition depends on probable cause to believe that [the defendant] committed an offense covered by the extradition treaty."); *In re Rodriguez Ortiz,* 444 F.Supp.2d at 884 ("this Court is not required to determine whether [the defendant] is guilty, but merely whether there was competent legal evidence [to] justify his apprehension and commitment for trial if the crime had been committed in Illinois."). Although there may be some inconsistencies in the record, the Court does not believe that they are so compelling as to negate a finding of probable cause. *See In re Sainez,* 2008 WL 366135, at *18 (rejecting inconsistencies and conflicts as "not sufficient to negate the showing of probable cause."); *see also In re Extradition of Gang–Choon Han,* No 11–2059, 2012 WL 33201, at *7 (C.D.Cal. Jan. 6, 2012) ("An extradition magistrate does not weigh conflicting evidence and make factual

determinations. The ultimate question of guilt or innocence is left to the country requesting extradition") (internal quotations omitted).

Finally, Cruz Montes wants the record to reflect his concern that he will not receive a fair trial in Mexico due to corruption that he says exists in the Mexican judiciary. Cruz Montes made this statement on the record during the extradition hearing but presented no supporting facts or evidence. The Government argues that Cruz Montes's concern does not affect the Court's decision because the Court is only authorized to make a determination about whether there is a sufficient evidentiary basis for the charge in Mexico. The Court agrees with the Government. The Secretary of State decides whether Cruz Montes should be extradited. The Court expresses no opinion as to Cruz Montes's concern that he will not receive a fair trial in Mexico.

Accordingly, for the reasons set forth herein, the Court finds there is sufficient and competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought. Mexico has provided the sworn statements of two individuals who can place Cruz Montes at the scene of the beating. These witnesses concur that Cruz Montes beat Gonzalez. Mexico also submitted medical reports that indicate the injuries Sanchez received at the hands of Cruz Montes during the beating were the cause of death because Sanchez lost so much blood due to his injuries that his organ systems failed as a result.

Therefore, after carefully considering the evidence submitted by Mexico, the Court concludes that this evidence is sufficient to "cause a person of ordinary prudence and caution to consciously entertain a reasonable belief" of Cruz Montes's guilt on the charge of homicide. *In re Nolan,* 651 F.Supp.2d at 815. The Court finds that Cruz Montes should be extradited to Mexico to face homicide charges in connection with Gonzalez's death. The Clerk of Court will

certify these findings to the United States Attorney for transmission to the United States Secretary of State.

## IV. CONCLUSION

Based on the foregoing, this Court finds that Jose Cruz Montes is extraditable for the offense of homicide and there is probable cause to certify this finding to the United States Secretary of State, as required under 18 U.S.C. § 3184.

IT IS THEREFORE ORDERED that a certified copy of this Memorandum Opinion and Order and Certification of Extraditability, along with all formal extradition documents received into evidence, a certified copy of all testimony taken at the hearings, and a copy of all memoranda of law filed on the issue of extradition be delivered by the Clerk of the Court of the Northern District of Illinois to the Assistant United States Attorney for this District for transmission to the United States Secretary of State.

IT IS FURTHER ORDERED that Jose Cruz Montes remain in the custody of the United States Marshal pending final disposition of this matter by the Secretary of State and the arrival of agents of the Government of Mexico for the purpose of his extradition to Mexico to face trial on the charge of homicide.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 26, 2016